**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**JULIAN MARCUS RAVEN,**

Plaintiff,

v.

**DONALD J. TRUMP, et al.,**

Defendants.

**Case No. 1:25-cv-02332 (TNM)**

---

**PLAINTIFF'S MOTION FOR JUDICIAL RECUSAL OF THE HON. TREVOR N. MCFADDEN**

**INTRODUCTION**

After the recent transfer order of case number 25-cv-02332 TSC from the chambers of the Honorable Tanya S. Chutkan to that of Judge Trevor N McFadden and pursuant to 28 U.S.C. § 455(a) and § 144, Plaintiff Julian Marcus Raven respectfully moves for the recusal of Judge Trevor N. McFadden from further proceedings in the above-captioned case. The judge's prior conduct and legal conclusions in Raven v. Sajet, 1:17-cv-01240, raise substantial doubts as to his impartiality and competence to adjudicate matters involving the Smithsonian Institution and its trust status. Judge McFadden's youth at the time of his 2018 decision in Plaintiff's prior case, professional background, and demonstrated misunderstanding of fundamental trust law principles, combined with his

RECEIVED

OCT 19 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

1

past dismissive treatment of Plaintiff's arguments, create an appearance of impropriety and irreparable bias.

---

**ARGUMENTS AND GROUNDS FOR RECUSAL**

**I. Appearance of Bias Under 28 U.S.C. § 455(a)**

Judge McFadden's conduct in Raven v. Sajet (2018) violated the requirement that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

- **Dismissal of Trust Law Claims Without Engaging Legal Authority:**
  Judge McFadden summarily dismissed Plaintiff's core trust law arguments concerning the fiduciary nature of the Smithsonian Institution, stating that the Institution "was once private" but is now a "government institution through and through," citing no amendment to the Smithsonian Act of 1846, which remains unchanged. **[Raven v. Sajet, 1:17-cv-01240, Doc. 54 at 10]**. The judge ignored the legal status of the Smithsonian as a perpetual charitable trust created by James Smithson's will and which is material to the instant case.

- **Unsupported Assertions of Government Identity:**
  Judge McFadden wrote, "Congress ratified it," and that "the Smithsonian is part of the United States government," based on the composition of the Board of Regents and federal funding, but without citing controlling trust law authority or constitutional analysis of separation of powers concerns. **[Id. at 9-10]**

- **Youth and Inexperience as Contributing Factors:**

  At the time of his decision in 2018, Judge McFadden was newly appointed to the bench at 37 years old, with a prosecutorial background but no known experience in trust law or complex constitutional fiduciary and free-speech issues. This lack of experience and fresh appointment likely contributed to his failure to engage meaningfully with Plaintiff's detailed fiduciary and trust law-based arguments.

## II. Prior Demonstrated Bias Against Plaintiff's Legal Position

- **Failure to Address Legal Theories:**

  Plaintiff advanced constitutional trust law theories supported by statutory and historical evidence, including the language of Smithson's will and the Smithsonian's founding statutes. These were not analyzed but brushed aside under sweeping generalizations about federal agency status.

- **Misapplication of Government Speech Doctrine:**

  Judge McFadden accepted that Director Sajet's conduct was "odious" and "partisan," yet found it fully permissible under the government speech doctrine, even suggesting that Smithsonian board members can be held politically accountable via "defenestration" by voters. This invented theory is an unconstitutional legal fiction and a violation of separation of powers. **[Id. at 10]**

- **Invented Legal Constructs:**

  The judge's claim that the public may "defenestrate" Smithsonian Regents (some of whom are not elected officials) to ensure accountability demonstrates a dangerously superficial and imaginative approach to constitutional analysis. No legal precedent supports this theory.

- **Published Critique and Continued Relevance of the Judge's Legal Fiction:**
  In 2022, Plaintiff published the book *Odious and Cerberus: An American Immigrant's Odyssey and his Free-Speech Legal War Against Smithson Corruption*, which devotes an entire chapter to Judge McFadden's ruling in *Raven v. Sajet*. The book provides a sustained legal and ethical critique of McFadden's decision, exposing it as a judicially constructed legal fiction that failed to account for trust law, constitutional boundaries, and fiduciary duty. This published analysis places the judge's credibility and impartiality in public question and serves as additional cause for recusal, so that no residual bias—conscious or unconscious—may persist or proceed from the federal bench in this matter.

## III. Violation of Judicial Ethics: 28 U.S.C. § 144

A party is entitled to seek recusal when a judge "has a personal bias or prejudice either against him or in favor of any adverse party."

- **Plaintiff has demonstrated that Judge McFadden holds adverse assumptions about the nature of the trust, the role of fiduciaries, and the rights of the Plaintiff.** These assumptions arise not from the law but from a mistaken reliance on agency case law inappropriate to charitable trust governance.
- **The judge's 2018 opinion in Raven v. Sajet is rife with unsubstantiated assertions, refusals to engage with Plaintiff's legal claims, and broad declarations of government immunity designed to shut down fiduciary accountability.**

**IV. Overlapping Legal Questions in the Instant Case**

The present case, *Raven v. Trump, 1:25-cv-02332 (TNM)*, hinges upon the same

foundational trust law issues as the dismissed *Raven v. Sajet* matter. Critically, Plaintiff's

arguments now intersect directly with the conduct and responsibilities of the President

of the United States with respect to the Smithsonian Institution, its Board of Regents,

and its obligations under the Smithson Trust.

- **Presidential Involvement and Trust Obligations:**
  The President's public conduct, statements, and appointments to the

  Smithsonian Board of Regents are central to Plaintiff's claim of constitutional

  malfeasance and trust mismanagement. Notably, the President recently called for

  the firing of Kim Sajet, the Director of the National Portrait Gallery. While such a

  firing might be politically and morally justified, it would constitute a form of

  executive overreach if the Smithsonian were, as Plaintiff correctly argues, a

  private charitable trust. Firing Kim Sajet would be the legal equivalent of the

  President attempting to fire a pastor of a church—a clear violation of the

  independence owed to private fiduciary institutions.

- **Judicial Abdication of Trust Enforcement:**
  Ironically, while the President lacked the legal power to fire Sajet in her capacity

  as a fiduciary of the Smithson Trust, Judge McFadden did possess the judicial

  authority to determine whether Sajet had breached her fiduciary and

  constitutional  duties—particularly the duty of impartiality and the obligation under

  federal statute and internal Smithsonian bylaws to act in good faith, nonpartisan

  service to the trust's purpose. Yet Judge McFadden, despite conceding Sajet's

behavior was partisan and odious, found her immune from consequences by relying on an expansive and inapplicable government speech doctrine.

- **Smithsonian's Own Acknowledgment of Executive Limits:**

  After the President's public call to terminate Sajet, the Smithsonian issued an official statement emphasizing its independence and asserting that it was not subject to executive branch control. This response came after the Board of Regent's meeting with the Chief Justice, the Vice President, and other senior federal officials in their capacities as Smithsonian Regents. This fact, part of the instant case record, completely undercuts Judge McFadden's earlier pronouncement that the Smithsonian is a government entity "through and through." If the Smithsonian itself rejects such a characterization in response to presidential overreach, then McFadden's legal conclusion cannot be sustained as either impartial or accurate.

- **Post-Regents Meeting Resignation of Kim Sajet as Admission of Guilt:**

  Following the June 2025 Board of Regents meeting, Director Kim Sajet submitted her resignation. This resignation—after seven years of emboldened tenure—is a de facto admission of her partisanship and ethical breaches. It stands in stark contrast to Judge McFadden's 2018 decision, which protected and legitimized her conduct. McFadden's ruling justified her retention, thereby enabling the Smithsonian to preserve her leadership despite her violations of the duty of impartiality and the statutory requirements imposed on federal employees and fiduciaries of charitable trusts. Meanwhile, Plaintiff's constitutional rights under the First Amendment and his legal rights as a trust beneficiary were not only

ignored but trampled, leaving irreparable injury and no redress. The result is a chilling violation of the most fundamental freedoms afforded to citizens under the United States Constitution and centuries of sacred trust law. McFadden must recuse himself.

- **Repeat of Prior Misunderstandings Is Probable:**

  Given the judge's prior mischaracterizations and his disregard for the legal framework of trust law, there is a substantial risk that his past errors will now be compounded and hardened into precedent in the instant matter. His earlier findings form the very basis upon which the Executive may now attempt to dismiss or evade fiduciary accountability once again.

- **McFadden's Reasoning Creates an Unconstitutional Federal Beast:**

  Judge McFadden's ruling that the Smithsonian is "government through and through" effectively constructs an unconstitutional federal beast operating outside the clear boundaries of separation of powers doctrine. It implies that the President, the Chief Justice, and members of Congress can sit as one unified organ of government, acting in unison through the Smithsonian, making policy and personnel decisions by consensus—an absurdity that defies the most basic design of the U.S. Constitution. This contradicts the foundational principle set out in *The Federalist No. 47* (Madison), where it was explained that the accumulation of all powers—legislative, executive, and judiciary—in the same hands may justly be pronounced the very definition of tyranny. The Supreme Court has reaffirmed these boundaries in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), where the Court invalidated President Truman's attempt to seize private

industry, emphasizing that the executive cannot unilaterally exercise legislative power. Similarly, in *Morrison v. Olson*, 487 U.S. 654 (1988), and *Bowsher v. Synar*, 478 U.S. 714 (1986), the Court enforced the separation of powers to prevent branches from delegating or accumulating improper authority. Judge McFadden's ruling erodes these principles by suggesting a hybrid, supra-constitutional structure. Such an arrangement would eliminate mutual checks and balances and violate the very principles that inspired the American Revolution. It is not only illegal, but a betrayal of the founders' architecture for liberty and justice. The Court must not permit McFadden's judicial fiction to persist.

## V. JUDGE MCFADDEN'S PRIOR RULING NECESSITATES RECUSAL UNDER WELL-ESTABLISHED FEDERAL LAW

Federal law requires recusal when a judge's prior actions or positions in a related case give rise to an objective appearance of bias or partiality. Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As the Supreme Court explained in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988), § 455(a) was designed to promote public confidence in the integrity of the judicial process, and thus focuses not just on actual bias but on the reasonable appearance of bias.

This principle was further sharpened in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), where the Court held that due process requires judicial disqualification when

there is a "serious risk of actual bias—based on objective and reasonable perceptions." Id. at 884. In *Caperton*, the Court emphasized that even the mere "probability of bias" can violate due process when the circumstances are sufficiently extreme.

Here, the extreme and compounding nature of Judge McFadden's prior judicial conduct—involving the very same Plaintiff, trust structure, legal questions, and key actors—creates an impermissible appearance of bias. In *Williams v. Pennsylvania*, 579 U.S. 1 (2016), the Court found a due process violation when a state supreme court justice failed to recuse himself from a post-conviction case in which, decades earlier, he had approved the defendant's capital prosecution in his capacity as district attorney. "It is axiomatic that a fair trial in a fair tribunal is a basic requirement of due process." *Williams*, 579 U.S. at 8 (internal quotation omitted). The Court underscored that "actual bias need not be proven" where a judge's prior involvement would cause a reasonable observer to question the judge's impartiality. Id. at 9.

The logic in *Williams* applies with full force here. Judge McFadden has already ruled on Plaintiff's trust-based claims in *Raven v. Sajet*, construing them in a manner wholly dismissive of their legal validity and constitutional grounding, while applying an invented "defenestration" theory to shield Smithsonian officials from trust law duties. That same judicial framework now looms over this case, threatening to foreclose Plaintiff's claims by prejudicial reference to earlier conclusions—conclusions already publicly contested by Plaintiff in his published book *Odious and Cerberus*, which devotes an entire chapter to McFadden's opinion.

Moreover, the Court in *Liteky v. United States*, 510 U.S. 540 (1994), recognized that while judicial rulings alone rarely constitute grounds for recusal, they may do so "if they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 555. McFadden's opinion in *Raven v. Sajet* exhibits precisely such deep-seated favoritism: a refusal to consider Plaintiff's trust law claims, a sweeping and unfounded identification of the Smithsonian as wholly governmental, and the construction of constitutional fictions to support agency immunity—all pointing to a rigid and immovable judicial posture.

Additionally, under 28 U.S.C. § 144, a judge must recuse if a party files a "timely and sufficient affidavit that the judge… has a personal bias or prejudice." The affidavit need not prove actual bias, only a sufficient showing that "a reasonable person would conclude that the judge's impartiality might reasonably be questioned." See *United States v. Holland*, 519 F.3d 909, 913 (10th Cir. 2008).

The public's confidence in the judiciary is irreparably harmed when a judge sits in judgment over his own prior reasoning, particularly where—as here—he stands to reinforce or extend his previous errors in law. It is unthinkable that a judge whose ruling gave legal protection to a Smithsonian official found to have acted in a partisan and odious fashion should now be entrusted to rule on whether the President's relationship to that same Smithsonian Institution violates constitutional trust duties. This is a textbook example of the "probability of bias" warned against in *Caperton* and *Williams*.

Finally, Judge McFadden's ruling declaring the Smithsonian Institution to be "government through and through" creates an unconstitutional chimera—a singular

entity comprised of all three federal branches acting as one. Such an institutional design obliterates the separation of powers doctrine, violating the framework established in *The Federalist Papers* and enshrined in Article I (Legislative), Article II (Executive), and Article III (Judicial) of the U.S. Constitution. As the Supreme Court emphasized in *Mistretta v. United States*, 488 U.S. 361, 380 (1989), "[t]he Constitution sought to divide the delegated powers of the new Federal government into three defined categories, Legislative, Executive, and Judicial, to assure… that each Branch of government would confine itself to its assigned responsibility."

McFadden's ruling is an affront to that fundamental principle and amounts to an "institutional heresy," transforming a private trust into a tripartite political mechanism immune from fiduciary accountability. No judge who has authored such a decision should be permitted to preside over the very litigation that exposes and challenges its constitutional absurdity.

---

**CONCLUSION**

For all the foregoing reasons, Plaintiff Julian Marcus Raven respectfully moves this Court to order the immediate recusal of the Hon. Trevor N. McFadden from this matter. His prior ruling in *Raven v. Sajet* irreparably taints the present proceeding with an appearance of bias, constitutes prior involvement in substantially the same controversy, and rests upon constitutional and legal errors so grave that continued oversight of the present action would destroy public confidence in judicial impartiality.

Case 25-cv-02332 TNM demands an experienced and seasoned Judge with extensive trust law experience. The Constitution demands better. Trust law demands better. The people deserve better.

**Respectfully submitted,**

Julian Marcus Raven

Pro Se Plaintiff
714 Baldwin Street,
Elmira, New York, 14901
October 19th, 2025

**Affidavit of Service**

I, Julian Marcus Raven, do hereby swear that a copy of this motion was served on Defendants and counsel.

The U. S. Attorney
Attorney Jeanine Pirro
Attorney Thomas Duffey
601 D St NW,
Washington,
DC 20004

Sworn this day, October 19th, 2025

Julian Marcus Raven
714 Baldwin St.,
Elmira, New York
14901

T-434-221-1676
Email- julianmarcusraven@gmail.com