UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JULIAN RAVEN,**<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>**DONALD TRUMP,** *et al.*,<br><br>　　　　　　Defendants. | Case No. 1:25-cv-2332 (TNM) |

## MEMORANDUM OPINION

　　National Portrait Gallery leadership has twice rejected Julian Raven's painting of President Donald Trump for display, and Raven has twice sued Portrait Gallery leadership over that decision.  For his third lawsuit, Raven, proceeding pro se, tries something different.  He now trains his sights on the entire Smithsonian, claiming that partisanship, corruption, mismanagement, and presidential overreach have infected the institution.  He sues the President, Congress, the Chief Justice, and Smithsonian leadership for their failure to stop its decline.

　　In this case, the third time is not the charm.  In pursuing the Smithsonian, Raven never alleges a concrete harm, particular to himself.  He thus lacks standing to bring this case.  The Court will dismiss it.

## I.

　　Raven's saga with the Smithsonian begins in 2016, when he submitted a portrait for display at the National Portrait Gallery.  Am. Compl. at 11, ECF No. 11.  The museum's director, Kim Sajet, rejected his submission and subsequent appeal, so Raven sued her and the museum's Board of Regents, alleging various tort claims and violations of the First and Fifth Amendments.  *See Raven v. Sajet*, 334 F. Supp. 3d 22, 25 (D.D.C. 2018).  The Court dismissed Raven's

complaint for failure to state a claim. *Id.* at 35–36. In 2022, Raven mentioned Sajet in a tweet, Sajet blocked Raven on Twitter, so Raven sued again. *See Raven v. Sajet*, No. 22-cv-2809, 2024 WL 5118228, at *1 (D.D.C. Dec. 16, 2024). That suit was also dismissed for failure to state a claim. *Id.* at *5.

After President Trump was re-elected in 2024, Raven once again sought to have the National Portrait Gallery display his portrait, and once again, Raven's submission was denied. Am. Compl. at 15. Unrelatedly, in May 2025, President Trump "publicly demanded Sajet's removal," prompting Sajet's resignation two weeks later. *Id.* at 12–13. These events led Raven to broaden his focus from the Portrait Gallery to the entire Smithsonian, and to problems beyond his portrait's rejection—"partisan hijacking, unaccountable corruption, leadership chaos," and "presidential meddling" in the Smithsonian's affairs. *Id.* at 9. Seeking to remedy these failures, Raven turned to this Court for the third time. *See* Compl., ECF No. 1.

He sues Lonnie Bunch III in his capacity as the Secretary of the Smithsonian, Richard Kurin as former Smithsonian Under Secretary, and the Smithsonian Board of Regents for "breach of fiduciary duty," "constructive fraud and misrepresentation," and "institutional nonfeasance and trustee dereliction." Am. Compl. at 19–22. And he sues Congress for "fiduciary nonfeasance and inaction," the President for "executive overreach and violation of donor intent," and all of them (collectively, "the Government") for "institutional nonfeasance combined with executive interference." *Id.* at 24–26. He also seeks a preliminary injunction enjoining the President from interfering with the Smithsonian and declaring the Smithsonian a private trust. *See* Pl.'s Mot. at 9, ECF No. 10. The Government moved to dismiss his claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Mot. to Dismiss at 1, ECF No. 16.

2

That motion is ripe, and the Court addresses it below.[1]  The Court also addresses Raven's many other pending motions.

## II.

Before turning to the substance of the motion to dismiss, the Court addresses Raven's recusal request.  *See* Mot. for Recusal, ECF No. 22; Mot. to Clarify at 4, ECF No. 23 (asking the Court to recuse).  Raven contends that this Court's disposition in *Raven v. Sajet*, 334 F. Supp. 3d 22 (D.D.C. 2018), raises "substantial doubts" about the Court's impartiality in handling this case.  Mot. for Recusal at 1–2.  He argues the Court failed to adequately address legal theories and misapplied relevant law.  *Id.* at 1–8.  Never mind that the D.C. Circuit summarily affirmed that ruling, *see Raven v. United States*, No. 18-5346, 2019 WL 2562945, at *1 (D.C. Cir. May 17, 2019), and the en banc court and Supreme Court denied further review, *see Raven v. United States*, No. 18-5346, (D.C. Cir. Aug. 12, 2019) (denying en banc review); *Raven v. United States*, 589 U.S. 1160 (2020) (mem.) (denying certiorari).

In any event, his complaints do not justify recusal under 28 U.S.C. § 455.  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994).  And Raven's claims, which boil down to dissatisfaction with the Court's resolution of his prior case, provide insufficient reason to deviate from that guidepost here.

## III.

Moving to the motion to dismiss, the Court begins and ends with the Government's standing arguments.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 94–95 (1998).

---

[1] The Court will grant Raven's Motion for Leave to File a Sur-reply, ECF No. 31, and considers the sur-reply in resolving this matter.

To survive a motion to dismiss under Rule 12(b)(1), the Complaint must allege a plausible basis for the Court's jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And jurisdiction encompasses standing to sue under Article III. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Under Rule 12(b)(1), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [Raven] the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

More, because Raven proceeds pro se, his Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). But even pro se litigants must meet the minimum pleading standards required by the Federal Rules and the Constitution. *See Yellen v. U.S. Bank, Nat'l Ass'n*, 301 F. Supp. 3d 43, 47 (D.D.C. 2018). That includes rules for alleging subject matter jurisdiction. *Stoller v. United States*, 216 F. Supp. 3d 171, 174 (D.D.C. 2016); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009).

"[S]tanding doctrine helps ensure that in each case, the proper plaintiff is suing the proper defendant over a kind of injury the Court is able to resolve." *Mass. Coal. for Immigr. Reform v. U.S. Dep't of Homeland Sec.*, 698 F. Supp. 3d 10, 22 (D.D.C. 2023). This principle means Raven must plausibly allege "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61).

Raven has not made that showing. He falters at the first hurdle—injury in fact—by failing to specify a concrete injury, particular to him. A concrete harm is "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (cleaned up). And a "particularized" injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Broad, "generally available grievance[s] about government" operations do not suffice. *Id.* at 573.

But that is all Raven's Complaint supplies. He alleges the Government "committed systemic breaches of fiduciary duty and constitutional violations" by overt politicization and "nationalization" of the Smithsonian. *See* Am. Compl. at 16. These failures, he says, resulted in the "loss of institutional independence and cultural trust integrity," *id.* at 34, or, put another way, those failures diminished Raven's "trust-based reliance and institutional access" to the Smithsonian, *id.* at 22. None of those injuries is concrete. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Vague claims of diminishing integrity without more amount merely to "abstract" harms. *See Daughtrey v. Carter*, 584 F.2d 1050, 1058 (D.C. Cir. 1978).

None of those injuries is particular to Raven, either. *See Clapper*, 568 U.S. at 409. Smithsonian management decisions, however much they politicize the institution, "no more directly and tangibly" affect Raven than they do "the public at large." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (cleaned up). Indeed, Raven himself emphasizes that this "ongoing injury" affects not only him, but all "people of the United States." Am. Compl. at 25, 39. He is thus left with exactly the kind of "harm to his and every citizen's interest" that bars suits from federal court. *Hollingsworth*, 570 U.S. at 706.

Even if Raven cited the second denial of his portrait as injury, he would still come up short. No one he sues here had a role in that decision. The rejection resulted from Sajet's "independent action," *Von Aulock v. Smith*, 720 F.2d 176, 181 (D.C. Cir. 1983); *see* Am. Compl.

5

at 20, which would leave Raven unable to fairly trace his painting's rejection to the Government actors party to this case, *Von Aulock*, 720 F.2d at 181.

Raven counters that he has standing through his status as a "public beneficiary of the Smithson trust." Pl.'s Mot. at 3; Am. Compl. at 27, 30, 36. He asserts that normally, the D.C. Attorney General must sue to enforce trust obligations in this circumstance "as guardian[] of the beneficiaries" of trusts operating in the District. Am. Compl. at 27. Because the Attorney General has not acted, Raven claims he may do the job given his "special interest" status as an artist. *Id.* at 27–30.

This argument falls short. First, the only support Raven provides for this theory comes from Hawaii state law and thus does not affect this case. *See id.* at 29 (citing *Kapiolani Park Pres. Soc. v. City of Honolulu*, 751 P.2d 1022 (Haw. 1988)).[2] It is true that the Smithsonian, unlike other federal entities, acts as a "trustee," in that it administers "the original Smithson trust property and later accretions." *Dong v. Smithsonian Inst.*, 125 F.3d 877, 883 (D.C. Cir. 1997) (noting that the Smithsonian was created "pursuant to a trust bequest" and the "United States, as trustee, holdings legal title to the original Smithson trust property and later accretion"). But that does not mean the Smithsonian serves as a trustee to individual Americans or artists, like Raven. When the United States subjects itself to a trust relationship, it does so specifically. *See, e.g.*, *United States v. Navajo Nation*, 537 U.S. 488, 505–06 (2003) (finding a "general trust relationship between the United States and the Indian people" insufficient reason to impose fiduciary duties on the United States) (cleaned up). Without a more "personal stake" in the

---

[2] Raven's other citations on this score do not lead to actual cases. *See* Am. Compl. at 30 (citing "*Eliot v. Keese. . .*, 305 Mass. 563, 21 N.E.2d 165, 167 (1939)") (italics added); *id.* at 29 (citing "*Edes Home v. Hooker,* 204 F.2d 555, 560 (D.C. Cir. 1953)"); *id.* at 25 (citing "*Edes Home v. Hooker*, 36 App. D.C. 566 (1911)") (italics added).

Smithsonian's affairs, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024), Raven has not shown standing. So the Court must dismiss his Complaint. *See Arpaio*, 797 F.3d at 15.

**IV.**

Finally, the Court addresses several other motions Raven filed. He twice moved this Court to certify his case to the Supreme Court. *See* Mot. for Order for Cert., ECF No. 2; Mot. for Cert., ECF No. 9. The Court will deny those motions. Should Raven desire a higher court's review, he must use the regular appeals process. *See Sibley v. U.S. Sup. Ct.*, 786 F. Supp. 2d 338, 345 (D.D.C. 2011) ("This court is not a reviewing court and cannot compel Supreme Court justices . . . to act.").

Next, Raven moves the Court to take judicial notice of various facts. *See* Mot. to Take Jud. Notice, ECF No. 3; Mot. to Clarify at 3, ECF No. 23. The Court will deny these motions too. This information is "irrelevant to disposition of the motion to dismiss, which turns on the adequacy of the well-pleaded factual allegations in the complaint, which are assumed to be true." *Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011).

**V.**

For these reasons, the Court will dismiss Raven's Complaint without prejudice, and deny his Motion for a Preliminary Injunction as moot.

The Court will also deny Raven's Motions to Recuse, Motions to Certify, Motions to Take Judicial Notice. It will grant him Leave to File a Sur-reply.

A separate Order will issue today.

Dated: January 26, 2026                                    TREVOR N. McFADDEN, U.S.D.J.